521 So.2d 150 (1988)
Dr. Matthew J. DEREN, Petitioner,
v.
The Honorable Volie WILLIAMS, Jr., etc., Respondent.
No. 87-1802.
District Court of Appeal of Florida, Fifth District.
January 28, 1988.
Rehearing Denied March 8, 1988.
*151 Mark B. Kleinfeld, of Jones & Foster, P.A., West Palm Beach, for petitioner.
Murray Sams, Jr., and Peter J. Yanowitch, of Sams, Yanowitch, Spiegel & Alger, P.A., Miami, for respondent.
UPCHURCH, F.D., Jr., Judge, Retired.
This Petition for Writ of Prohibition is before this court to prohibit Judge Volie Williams, Jr., from sitting in the case of West v. Deren, after Judge Williams had denied Dr. Deren's motion to disqualify.
Dr. Deren, an anesthesiologist, was sued for professional malpractice allegedly committed during surgery on William West, a minor, resulting in the child suffering cerebral palsy. The first trial resulted in a mistrial. Another trial was held limited solely to the question of whether the statute of limitations had run. This issue was decided adversely to Dr. Deren. The motion for disqualification was filed on August 19, 1987, approximately two months after his second trial had concluded. A third trial, on the malpractice claim, has been scheduled for March, 1988. The motion for disqualification was denied solely for the reason that it was untimely filed.
Florida Rule of Civil Procedure 1.432(c) governs motions to disqualify and states: "TIME. A motion to disqualify shall be made within a reasonable time after discovery of the facts constituting grounds for disqualification."
Dr. Deren's affidavit attached to the motion stated basically three reasons why he feared he would not receive a fair trial. First, that Judge Williams' grandchild has cerebral palsy, and Judge Williams expressed sympathy toward cerebral palsy patients. Second, Judge Williams and plaintiffs' counsel, Murray Sams, have been longtime friends, and engaged in ex parte communications during the prior two trials. Third, in the previous trials, almost all rulings were made in favor of the plaintiffs. Apparently, Judge Williams concluded *152 that since all of the grounds were discovered during the first and second trials, petitioner unreasonably delayed in filing the motion after conclusion of the second trial. However, with the trial not scheduled until March, 1988, it is unlikely that the motion would to any degree delay or interfere with the orderly progress of the case. Under these circumstances, since an issue of the possible bias or prejudice of the trial judge brings into question the very essence of justice, we think a motion to disqualify should be denied for untimeliness only when its allowance will delay the orderly progress of the case or it is being used as a disruptive or delaying tactic. None of these factors appears to be present in this instance so the legal sufficiency of the motion will be considered.
If the grounds asserted in a motion for disqualification are reasonably sufficient to create a well-founded fear in the mind of a party that he or she will not receive a fair trial, the judge should recuse himself. See Fischer v. Knuck, 497 So.2d 240 (Fla. 1986). To determine whether the motion is "legally sufficient" the court must determine if the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial. "It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind, and the basis for such feeling... ." State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695, 697-98 (1938); Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981).
Dr. Deren alleged in his affidavit that during both trials, "Judge Volie Williams has openly expressed sympathy toward the plight of cerebral palsy victims in general, his grandchild in particular, and has expressed concern over the expense and difficulty of obtaining care and treatment for cerebral palsy patients including the Plaintiff... ."
Couple this with the allegations regarding the long standing friendship of Judge Williams and plaintiffs' attorney and the ex parte communications between them and it becomes easy to see that a litigant may have a genuine and reasonable belief that he will not have his case tested impartially.[1]
Almost all who practice law recognize that most judges are capable of numbering among their friends some of the attorneys who appear before them. But few attorneys are articulate enough to explain to their clients that the fact that opposing counsel and the trial judge shared a cup of coffee at the local coffee shop during the last recess was no cause for alarm. The test has to be how does the litigant reasonably view the remarks or conduct of the judge.
By this test we conclude that the motion was legally sufficient and should have been granted. While few persons would not be sympathetic to the plight of a child afflicted with cerebral palsy, we conclude that the continued expression of that sympathy and the manifestation of a close friendship with opposing counsel, coupled with ex parte communications during trial, would reasonably cause a litigant to be apprehensive of the fairness of the trial judge.
WRIT GRANTED.
COBB, J., concurs.
ORFINGER, J., dissents with opinion.
ORFINGER, Judge, dissenting.
I must disagree with the majority opinion primarily because the motion to disqualify the judge was not made "within a reasonable time after discovery of the facts constituting grounds for disqualification." In his motion to disqualify Judge Williams, petitioner admits that the factual matters on which he relies became known to him "during the course of the first two jury trials." The first jury trial began in March 1985 and resulted in a mistrial because of a deadlocked jury. Based on a stipulation of the parties, a second jury trial was commenced on May 4, 1987 on the bifurcated *153 issue of the applicability of the statute of limitations. This trial was presided over by Judge Williams without objection. After post-trial motions were denied, petitioner then sought a writ of certiorari from this court on the partial judgment rendered after the second trial, without raising any issue as to the disqualification of the judge. This court denied certiorari by order entered July 8, 1987. It seems to me that going through two trials, countless post-trial motions and a petition for writ of certiorari while knowing all the facts on which a litigant later relies for disqualification, and then filing the motion because he has suffered adverse rulings, makes the motion untimely. Fischer v. Knuck, 497 So.2d 240 (Fla. 1986); Averbuch v. Lauffer, 516 So.2d 973 (Fla. 4th DCA 1987). See also Richards v. Kaney, 490 So.2d 1299 (Fla. 5th DCA 1986). A motion to disqualify the judge filed some 2 1/2 years after the facts are known comes too late.
Moreover, I believe the grounds asserted are so subjective as to fail to present a well-founded fear that the judge is biased in favor of the plaintiffs. The affidavit asserts that the judge has "on several occasions, stated both on the record and off, that he has a grandchild afflicted with cerebral palsy [and] has also openly expressed sympathy toward the plight of cerebral palsy victims in general, [and] his grandchild in particular...." I doubt that anyone could be found who does not feel sympathy towards a cerebral palsy victim. Do petitioners expect to find a judge with a heart of stone who is not sympathetic? Obviously, this known fact at the first trial did not instill a fear of prejudice in petitioner, nor did the judge's "sympathy" appear to affect the outcome of the first trial.
I think also that the remaining allegations, again known at the first trial, are so vague as to be legally insufficient. In this regard, in all fairness, we should point out that the reference in the majority opinion to "the fact that opposing counsel and the trial judge shared a cup of coffee at the local coffee shop during the last recess" is by way of illustration only. There is not the slightest suggestion that any such occurrence took place here. I would deny the petition.
NOTES
[1] The allegations regarding adverse rulings are insufficient. See Claughton v. Claughton, 452 So.2d 1073 (Fla. 3d DCA 1984); Gieseke v. Grossman, 418 So.2d 1055 (Fla. 4th DCA 1982).